IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

PRENTICE BROWN                                                              PLAINTIFF

v.                                                   CIVIL ACTION NO.: 3:14-cv-00207-GHD-SAA

CITY OF SALTILLO, MISSISSIPPI and
BILL WILLIAMS in his official and
individual capacity                                             DEFENDANTS

## MEMORANDUM OPINION GRANTING
## DEFENDANTS' PARTIAL MOTION TO DISMISS

Presently before the Court is a partial motion to dismiss [11] filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure by Defendants, the City of Saltillo, Mississippi and Bill Williams. Upon due consideration, the Court finds that the motion is well taken and should be granted. The Court further finds that Plaintiff's request for oral argument on the motion is not well taken, as the same is not necessary to a ruling on the motion.

*A. Factual and Procedural Background*

On September 23, 2014, Plaintiff Prentice Brown ("Plaintiff"), former assistant chief of police of the City of Saltillo, Mississippi, filed this action against Defendants, the City of Saltillo, Mississippi ("the City") and Bill Williams in his official and individual capacity ("Williams"). Plaintiff asserts causes of action for First Amendment free speech retaliation under 42 U.S.C. § 1983 and malicious interference with employment/contract under state law.[1] Plaintiff alleges the following facts in support of his claims.

---

[1] Although Plaintiff also asserts a cause of action for First Amendment free speech violation under 42 U.S.C. § 1983, the facts he alleges in support of the claim do not pertain to Plaintiff and Defendants and were apparently inadvertently inserted from a complaint in another case drafted by Plaintiff's counsel. Furthermore, Plaintiff, a public employee, has only alleged facts in support of a First Amendment free speech retaliation claim. Thus, to the extent Plaintiff has attempted to allege another type of First Amendment free speech violation claim, the same is not well taken and must be dismissed.

1

Plaintiff alleges that the City hired him in approximately 2003 as a police officer and that he was serving as assistant chief of police when he was "unconstitutionally fir[ed]" from his position on or about July 10, 2013. Pl.'s Am. Compl. [8] ¶ 11. Plaintiff further alleges that "[p]rior to his unlawful termination, Plaintiff had performed his job duties without incident" and that "[h]is record was pristine and there were no registered complaints lodged against him, nor were there any suspensions or reprimands." *Id.* ¶ 13. However, Plaintiff avers that "[t]his changed when Plaintiff made statements and/or engaged in activity protected by the United States Constitution Amendment One," specifically by openly supporting the then-chief of police, Steven Brooks, a Democrat contender, in the 2013 Saltillo mayoral election. *Id.* ¶¶ 14–15. Brooks did not win the mayoral race; instead, Saltillo elected Rex Smith, a Republican contender, as mayor. Plaintiff avers that "[i]t was well-known throughout the community that the out-going Mayor of Saltillo, [Williams], was a political adversary of [Brooks]," *id.* ¶ 17, and that "Williams had also disliked Plaintiff because Plaintiff was an outspoken critic" of Williams, *id.* ¶ 18. Plaintiff cites to a particular incident wherein "Plaintiff was present during a Saltillo City Council Meeting in which [Williams] summoned Sergeant Grant Bailey . . . and[ ] after [Bailey] was sworn in under oath by the city clerk, [Williams] started to question [Bailey] about his work hours pertaining to a Driving Under the Influence Grant." *Id.* ¶ 18. Plaintiff alleges that he "objected to [Williams'] questioning [Bailey] without [Bailey] having the benefit of a lawyer at this meeting." *Id.*

Subsequently, Plaintiff avers, he received a telephone call from Williams, who was then still current mayor of the City, during which conversation, "[Williams] stated that Plaintiff was being suspended from his position as [a]ssistant [c]hief of [p]olice." *Id.* ¶ 20. Plaintiff alleges that when he asked Williams why he was being suspended Williams "refused to give Plaintiff a

reason" and "told Plaintiff that Plaintiff did not need to know the reason." *Id.* ¶ 22. Plaintiff further alleges that Brooks, who was still acting chief of police and Plaintiff's supervisor, expressed surprise at the suspension decision, as he had not received notice of the same.

Plaintiff maintains that although Williams never expressed a reason to him for the suspension, Williams gave a reason to two local newspapers. *Id.* ¶¶ 28–30. The referenced newspaper articles, which are attached to Plaintiff's amended complaint, state that Williams' reason for the suspension decision was that Plaintiff and other members of the police department were intimidating those connected to the police department who were not loyal to Brooks' mayoral campaign. *See* Newspaper Articles [8-1] at 1, [8-2] at 1. Furthermore, Plaintiff alleges that on June 27, 2013, the City notified Plaintiff that he was suspended because he intimidated the wife of Officer Randy Box concerning the mayoral election. Pl.'s Am. Compl. [8] ¶ 33.

Subsequently, on or about July 10, 2013—after Williams had left the office of mayor and Rex Smith had become mayor—the City held a due process hearing; as a result, Plaintiff maintains he was terminated from his position as assistant chief of police. Plaintiff avers that the City used the media to harass Plaintiff and inflict injury to Plaintiff's character, reputation, and future job prospects, particularly in their comments to a local television station. Plaintiff further avers that Williams' comments to the media and throughout the due process hearing were "the impetus for Plaintiff's termination," and that his termination was in retaliation for his support of Brooks in the Saltillo mayoral election. *Id.* ¶ 45.

On December 22, 2014, Defendants filed both the present partial motion to dismiss [11] pursuant to Rule 12(b)(6) and an answer [15] to Plaintiff's amended complaint [8]. Plaintiff has filed a response, and Defendants have filed a reply.

## B. Federal Rule of Civil Procedure 12(b)(6) Standard

Motions to dismiss pursuant to Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Kocurek v. Cuna Mut. Ins. Soc'y*, 459 F. App'x 371, 373 (5th Cir. 2012) (citing *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003)). When deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations set forth in the complaint and any documents attached to the complaint. *Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216–17 (5th Cir. 2014) (per curiam) (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)).

"[A plaintiff's] complaint therefore 'must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." ' " *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (per curiam) (quoting *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) (internal quotation marks omitted)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993) (internal quotation marks omitted)). "Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief

above the speculative level.' " *Emesowum v. Hous. Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. 1955).

*C. Analysis and Discussion*

Defendants present several arguments in support of dismissal of certain claims by Plaintiff: (1) that Plaintiff's First Amendment free speech retaliation claim based on Plaintiff's suspension with pay is not tenable; (2) that Plaintiff's First Amendment free speech retaliation claim based on Williams' alleged statements to the media is not tenable; (3) that Williams is qualifiedly immune from suit on these theories, as the same are not clearly established law; and (4) that the malicious interference with employment/contract claim (asserted solely against Williams) must be dismissed because Plaintiff failed to comply with the prerequisites of suit on such a claim under the Mississippi Tort Claims Act (the "MTCA"). The Court will examine each argument in turn.

### 1. Free Speech Retaliation Claim

Plaintiff urges his First Amendment free speech retaliation claim through § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must [1] allege the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (citing cases). The Fifth Circuit has

instructed that to sustain a § 1983 claim, a plaintiff is required to assert "claims of specific conduct and actions giving rise to a Constitutional violation." *See Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996) (emphasis added).

Plaintiff claims that Defendants terminated him from his employment as assistant chief of police for the City in retaliation for engaging in speech protected by the First Amendment, and that Defendants otherwise violated his First Amendment free speech rights in violation of § 1983.

"The government may not constitutionally compel persons to relinquish their First Amendment rights as a condition of public employment." *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999). "Speech by citizens on matters of public concern lies at the heart of the First Amendment, which 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people[.]' " *Lane v. Franks*, — U.S. —, 134 S. Ct. 2369, 2377, 189 L. Ed. 2d 312 (June 19, 2014) (quoting *Roth v. United States*, 354 U.S. 476, 484, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957)). "In order for a public employee to recover for a free speech retaliation claim, the plaintiff must satisfy four elements: '(1) the plaintiff must suffer an adverse employment decision; (2) the plaintiff's speech must involve a matter of public concern; (3) the plaintiff's interest in commenting on matters of public concern must outweigh the defendant's interest in promoting efficiency; and (4) the plaintiff's speech must have motivated the defendant's actions." *Cox v. Kaelin*, 577 F. App'x 306, 310 (5th Cir. 2014) (per curiam) (quoting *Finch v. Fort Bend Indep. School Dist.*, 333 F.3d 555, 563 (5th Cir. 2003)).

Defendants argue that Plaintiff's suspension with pay and Williams' alleged statements to the media about the suspension decision do not constitute viable adverse employment actions

6

upon which Plaintiff can seek First Amendment relief. Defendants do not challenge that Plaintiff's termination constitutes a viable adverse employment action upon which Plaintiff can seek First Amendment relief.

Plaintiff's amended complaint does not specify an adverse employment action, but asserts that Plaintiff was suspended and then terminated from his position as assistant chief of police. *See* Pl.'s Am. Compl. [8] ¶¶ 11–13, 20–23, 37. In his response to the partial motion to dismiss, Plaintiff clarifies that the suspension was with pay. *See* Pl.'s Mem. Br. Supp. Resp. Opp'n to Defs.' Partial Mot. Dismiss [19] at 10–11. Plaintiff alleges that Williams informed the local media of the reason for Plaintiff's suspension "with the sole purpose of inflicting injury to Plaintiff's character, reputation, and future job prospects," Pl.'s Am. Compl. [8] ¶¶ 28–31, 42; that "Williams['] malicious actions towards Plaintiff, as detailed by various media outlets and throughout the due process hearing, were the impetus for Plaintiff's termination, *id.* ¶ 45; and states in his response that "Williams used the spotlight to attack Plaintiff both personally and professionally" and that "[s]uch rhetoric was so over the top that it constituted an adverse employment action because it assailed Plaintiff's character and mental stability as to undermine community confidence in Plaintiff's ability to perform his job duties as [a]ssistant [c]hief of [p]olice," Pl.'s Mem. Br. Supp. Resp. Opp'n to Defs.' Partial Mot. Dismiss [19] at 11.

The Court's task at this juncture is merely to determine whether Plaintiff has stated a viable claim for relief, not whether he will ultimately prevail on the claim. With that limitation in mind, the Court turns to examine whether Plaintiff's allegations of suspension with pay or Williams' alleged statements to the media constitute a cognizable adverse employment action upon which his First Amendment free speech retaliation claim can be based.

"Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Pierce v. Tex. Dep't of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994). The Fifth Circuit "has 'declined to expand the list of actionable actions, noting that some things are not actionable even though they have the effect of chilling the exercise of free speech.' " *Benningfield v. City of Houston, Tex.*, 157 F.3d 369, 376 (5th Cir. 1998) (quoting *Pierce*, 37 F.3d at 1150). "The reason for not expanding the list of adverse employment actions is to ensure that § 1983 does not enmesh federal courts in 'relatively trivial matters.' " *Breaux v. City of Garland, Tex.*, 205 F.3d 150, 157 (5th Cir. 2000) (quoting *Dorsett v. Bd. of Trs.*, 940 F.2d 121, 123 (5th Cir. 1991)).

A temporary suspension <u>without</u> pay has been found to be an adverse employment action within the context of a First Amendment retaliation claim. *See Hypolite v. City of Houston, Tex.*, 493 F. App'x 597, 606 (5th Cir. 2012) (per curiam); *Wilson v. City of Baton Rouge, La.*, 327 F. App'x 497, 498 (5th Cir. 2009) (per curiam); *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007). A temporary suspension <u>with</u> pay has not been found to be an adverse employment action—if followed by reinstatement and no loss of benefits. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331–32 (5th Cir. 2009); *Breaux*, 205 F.3d at 158 ("Although Breaux was placed on administrative leave from late April to July 1994, Breaux was paid while on leave and returned to his pre-leave position. Thus, Breaux suffered no adverse action with respect to the leave.") (footnote omitted); *Benningfield*, 157 F.3d at 378 (plaintiff did not suffer adverse employment action when promotion was delayed two years in response to her exercising her free speech rights because she eventually received the promotion with retroactive pay and seniority). *Accord Brown v. City of Syracuse, N.Y.*, 673 F.3d 141, 144 (2d Cir. 2012); *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004) ("[A] suspension with pay and full benefits

pending a timely investigation into suspected wrongdoing is not an adverse employment action."). "Some benefit must be denied or some negative consequence must impinge on the Plaintiff's employment before a threat of discharge is actionable." *Breaux*, 205 F.3d at 159.

In this case, Plaintiff was suspended with pay, but was never reinstated to his position before his due process hearing and subsequent termination. This is a close question of law, but given the Fifth Circuit's reluctance to expand the definition of adverse employment action, this Court finds that Plaintiff's First Amendment free speech retaliation claim cannot be cognizably based on his suspension with pay. Accordingly, Defendants' partial motion to dismiss [11] shall be granted on this ground as to both the City and Williams.

Williams' alleged statements to the media concerning the reason for the decision to suspend Plaintiff from his employment could be a cognizable basis for Plaintiff's First Amendment free speech retaliation claim. However, because the law in this area is not clearly established, Williams is entitled to qualified immunity.

In *Colson v. Grohman*, 174 F.3d 498 (5th Cir. 1999), the Fifth Circuit was confronted with a somewhat similar set of allegations and stated:

> Colson has alleged only that she was the victim of criticism, an investigation (or an attempt to start one), and false accusations: all harms that, while they may chill speech, are not actionable under our First Amendment retaliation jurisprudence. She maintains that "[i]n retaliation for Colson's expressive activity, from December 1992 through May 1994 and beyond, Defendants conspired together to falsely brand Colson and two of her fellow Council members, Deloss A. Miller and Benny Frank as criminals." As part of this scheme, Colson claims, Hogg distributed "Pearland Pandemonium" even though "he knew or should have known that the allegations contained in his report were false and would stigmatize Colson, Frank, and Miller and cast them in a false light in the Pearland community." The defendants' actions in this respect constitute no more than the making of false accusations, which is not actionable under § 1983. Colson also asserts that "Hogg and Grohman, relying on information they knew to be false

9

> or with reckless disregard to the truthfulness of the same, repeatedly urged the Brazoria County Attorney's office to indict Colson, Frank and Miller and/or publicly brand them as criminals." These actions are again no more than false accusations and, even insofar as the County Attorney's Office did investigate them, are not actionable under § 1983. Finally, Colson claims that the defendants circulated two sets of recall petitions, even though "they knew or should have known that the allegations contained in the Petitions were false and would stigmatize Colson, Frank, and Miller and cast them in a false light in the Pearland community." The allegations contained in the recall petitions are, like those made to the County Attorney's Office and to the general public, mere accusations that are not actionable under § 1983.

*Id.* at 512; *see Breaux*, 205 F.3d at 159 n.15 ("The other verbal criticisms that the Plaintiffs allege took place at the chain of command board hearings are not adverse employment actions."); *Harrington v. Harris*, 118 F.3d 359 366 (5th Cir. 1997) (mere accusations or criticism do not constitute adverse employment actions). However, the allegations could be actionable if they amount to a "campaign of retaliatory harassment [that] rise to such a level as to constitute a constructive adverse employment action." *See Colson*, 174 F.3d at 514.

In the case *sub judice*, Plaintiff's allegations that Williams made false statements to the media in an attempt to damage Plaintiff's reputation are quite similar to those in *Colson* that were not actionable under § 1983—except that in this case Plaintiff alleges that Williams' statements to the media "were the impetus for Plaintiff's termination" by the City. Pl.'s Am. Compl. [8] ¶ 45. Plaintiff possibly alleges a cognizable First Amendment free speech retaliation claim based on Williams' alleged malicious statements to the media. However, Williams is nonetheless entitled to qualified immunity for the following reasons.

"Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.' " *Lane*, 134 S. Ct. at 2381 (quoting *Ashcroft v. al–Kidd*, 563 U.S. ——, ——, 131 S. Ct. 2074, 2085, 179 L. Ed. 2d 1149 (2011)). " 'When a

defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.' " *Beaulieu v. Lavigne*, 539 F. App'x 421, 424 (5th Cir. 2013) (per curiam) (quoting *Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *McClendon v. City of Columbia, Miss.*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc))). To negate the defense of qualified immunity, Plaintiff must plead sufficient facts to make it plausible that Williams' conduct: (1) violated a "clearly established federal constitutional right;" and (2) was not "objectively reasonable in light of clearly established law." *Nunez v. Simms*, 341 F.3d 385, 387 (5th Cir. 2003).

The relevant question for qualified immunity purposes at this Rule 12(b)(6) stage is this: Could Williams reasonably have believed, at the time Plaintiff was suspended, that Williams' statements to the media concerning the reasons for the suspension constituted behavior that was in violation of the First Amendment? This Court is of the opinion that case law would not put a reasonable official on notice that this conduct would constitute a violation of the First Amendment. Accordingly, the Court finds that because the law is not clearly established in this area, Williams is entitled to qualified immunity on the claim.

Furthermore, the Court finds unpersuasive Plaintiff's theory that Williams can be held liable under the First Amendment based on Plaintiff's termination from his employment with the City based on a "cat's paw" theory. Plaintiff alleges that on July 10, 2013, after Williams left office and Rex Smith took office as mayor and while Plaintiff was still on suspension, the City held a due process hearing that resulted in Plaintiff's termination. Pl.'s Am. Compl. [8] ¶¶ 36–37. As Defendants correctly argue, liability for Plaintiff's termination can rest only with the decisionmaker, which could not have been Williams, since he was no longer in office as mayor

11

and did not cast a vote for or against the termination. Therefore, Williams must be dismissed as a party to the First Amendment retaliation claim on this ground, as well.

This is not to say that Plaintiff cannot advance a "cat's paw" theory against the City by alleging that Williams was the "cat's paw" of the Board of Aldermen, who acted with retaliatory motives. In *Gee v. Principi*, 289 F.3d 342 (5th Cir. 2002), the Fifth Circuit stated that although in the determination of "whether an adverse employment action was taken as a result of retaliation, our focus is on the final decisionmaker[,]" it is also true that "when the person conducting the final review serves as the 'cat's paw' of those who were acting from retaliatory motives, the causal link between the protected activity and the adverse employment action remains intact." *Id.* at 346. At this stage of the litigation, Plaintiff's theory that Williams was the "cat's paw" of the Board of Aldermen can be used to support the causation element of his First Amendment retaliation claim against the City. However, it is clear that the First Amendment retaliation claim must be dismissed against Williams, as Plaintiff has not alleged facts demonstrating liability on the part of Williams. Accordingly, the First Amendment free speech retaliation claim against Williams is properly dismissed in its entirety.

### 2. Malicious Interference with Employment/Contract Claim Against Williams Only

Finally, Defendants' partial motion to dismiss challenges the supplemental state-law claim for malicious interference with employment/contract against Williams on the grounds that Plaintiff failed to comply with the notice requirement in the MTCA and cannot correct this deficiency at this late stage because the one-year statute of limitations has run on the claim.

Plaintiff does not dispute that he did not comply with the notice requirements of the MTCA before filing this action, but argues that the claim falls outside the purview of the MTCA, because Williams acted outside the scope of his employment by speaking to the media about

Plaintiff's suspension before the due process hearing took place. Plaintiff further maintains that even if the claim falls within the purview of the MTCA the Court should permit Plaintiff leave to file his notice of claim with the City and amend his complaint. Finally, Plaintiff argues that the applicable statute of limitations on this claim is three years, not one year as contended by Defendants.

Defendants cite two cases which are dispositive in this area of the law. In *Whiting v. University of Southern Mississippi*, 62 So. 3d 907 (Miss. 2011), the Mississippi Supreme Court ruled that a malicious interference claim is subject to the MTCA and thus that the notice requirement applies to such claims. *Id.* at 916. Subsequently, in 2013, the Fifth Circuit held in accordance with *Whiting*—the most recent Mississippi State Court decision in the area of the law—that malicious interference claims are subject to the MTCA. *See Johnson v. City of Shelby, Miss.*, 743 F.3d 59, 61 (5th Cir. 2013), *cert. granted, judgment rev'd on other grounds*, 135 S. Ct. 346 (2014). Mississippi case law is now clear that malicious interference claims fall within the purview of the MTCA. Accordingly, Plaintiff's malicious interference claim against Williams is deficient for failure to comply with the MTCA's notice requirements.

The Court further finds that the malicious interference claim against Williams, as an MTCA claim, is subject to a one-year statute of limitations. *See id.* However, in accordance with Mississippi Supreme Court precedent, "a properly served complaint—albeit a complaint that is wanting of proper pre-suit notice—should still serve to toll the statute of limitations until there is a ruling from the trial court." *Price v. Clark*, 21 So. 3d 509, 522 (Miss. 2009). Failure to comply with the MTCA's notice requirements would ordinarily mandate dismissal of the malicious interference claim without prejudice to give the plaintiff an opportunity to file suit within the one-year statute of limitations. *See id.* In a 2015 case, the Mississippi Supreme Court

13

reiterated this holding, thus solidifying it as the settled law in this area. *See Tallahatchie Gen. Hosp. v. Howe*, 154 So. 3d 29, 32 (Miss. 2015).

However, in this case, Plaintiff's termination occurred on July 10, 2013. Any alleged malicious acts by Williams that led to his termination would have occurred prior to the termination and when Williams was still in the office of mayor. Plaintiff's case was filed on September 23, 2014, approximately one year and two months after his termination. Accordingly, even though Plaintiff would be permitted to refile his wrongful termination claim and serve proper notice on Williams under the MTCA if his case had been filed within the one-year statute of limitations, it is clear that the one-year statute of limitations had already been exceeded by the filing of Plaintiff's initial complaint and thus a dismissal "without prejudice" would serve no purpose. Therefore, Plaintiff's malicious interference with employment/contract claim against Williams must be dismissed with prejudice.

## D. Conclusion

In sum, the Court finds that Defendants' partial motion to dismiss [11] shall be GRANTED; Plaintiff's First Amendment free speech retaliation claims against Defendant Bill Williams in his official and individual capacity shall be DISMISSED; Plaintiff's malicious interference with employment/contract claim against Defendant Bill Williams in his official and individual capacity shall be DISMISSED; and Defendant Bill Williams in his official and individual capacity shall be DISMISSED AS A PARTY TO THE ACTION.

Plaintiff's remaining First Amendment free speech retaliation claim against Defendant the City of Saltillo, Mississippi was unchallenged in Defendants' partial motion to dismiss [11] and will proceed.

THIS, the 7th day of May, 2015.

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE